UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ROSa W. SCARCELLI, )<br>)<br>Plaintiff )<br>v. )<br>) Case No. 2:12-cv-72-GZS<br>PAMELA W. GLEICHMAN, )<br>)<br>Defendant )<br>and )<br>)<br>CHRISTOPHER J. W. COGGESHALL, )<br>Trustee of The Promenade Trust, )<br>)<br>Party-in-Interest ) | |

## ORDER ON MOTION FOR PRELIMINARY INJUNCTION

Before the Court is Plaintiff's Motion for Preliminary Injunction (Docket # 7). Plaintiff Rosa Scarcelli filed this Motion on March 21, 2012 and Defendant Pamela Gleichman failed to respond to the motion by the deadline of April 11, 2012. Defendant Gleichman also did not file an answer to the Amended Complaint and, as a result, a default was entered on April 19, 2012 (Docket # 23). The Court now GRANTS the Motion for Preliminary Injunction as explained herein.

**I.    FINDINGS OF FACT**

The Motion for Preliminary Injunction is supported by various declarations with exhibits, including the Declaration of Christopher J. W. Coggeshall, the Declaration of Rosa W. Scarcelli, and the Declaration of James D. Poliquin. In light of Defendant's default on the Amended Complaint, the Court deems all of the allegations contained in the Amended Complaint (Docket # 4) admitted for purpose of the pending Motion. Upon consideration of this record, the Court

makes the following findings of fact and conclusions of law in connection with the Motion for Preliminary Injunction.

1. Oak Knoll Associates Limited Partnership ("Oak Knoll LP") is a limited partnership formed on November 18, 1988 under the laws of the State of Connecticut for the purpose of constructing and operating a 42-unit apartment project known as Oak Knoll Apartments (the "Project") located in Norwalk, Connecticut.

2. The Project is a subsidized housing project regulated under the jurisdiction of the Connecticut Housing Financing Authority ("CHFA") and CHFA provided financing for the Project as reflected in various financing documentation executed on December 8, 1988.

3. Section 10.2 of the Oak Knoll LP Limited Partnership Agreement provides that "this Agreement shall be governed by and construed in accordance with the laws of the State of Connecticut."

4. The original Managing General Partner of Oak Knoll LP was Gleichman & Company, Inc. The Defendant Gleichman became Managing General Partner on February 1, 1997 pursuant to an "Amendment to Limited Partnership Agreement of Oak Knoll Limited Partnership" executed on that date. Subsequent to the execution of the February 1, 1997 Amendment, Defendant Gleichman has been the Managing General Partner, Plaintiff Rosa Scarcelli, a General Partner, and The Promenade Trust, the only Limited Partner. Christopher Coggeshall is the Trustee of The Promenade Trust.

5. As amended by the February 1, 1997 Amendment, Section 4 of the Limited Partnership Agreement regarding allocation of profits, losses and distributions provides in relevant part as follows:

> "4.1.1. Except as otherwise provided in Section 4, Profits and all distributions of surplus cash from operations, whether upon dissolution of the Partnership or otherwise, shall be allocated and

2

distributed one hundred percent (100%) to the Limited Partner. Distributions of Profits and surplus cash from operations to the Partners will be made at times the Managing General Partner deems appropriate. Losses shall be allocated one hundred percent (100%) to the General Partner. Distributions of Losses will be made to the Partners at the end of each calendar year."

   4.1.2 Notwithstanding the provisions of Section 4.1.1, Capital Proceeds shall be allocated and distributed one hundred [sic] (100%) to the limited Partner as set forth in Exhibit B hereto.

6. A Purchase and Sale Agreement was executed as of October 11, 2011 between Oak Knoll LP and Navarino Capital Management LLC, which document was executed by Defendant Gleichman on behalf of Oak Knoll LP.

7. The total purchase price identified in Article 1.3 of the Purchase and Sale Agreement is $6,300,000, $950,000 less than the purchase price offered in a letter of intent by the same buyer dated June 21, 2010.

8. The current status of the Purchase and Sale Agreement is unknown, including any scheduled closing date or whether the agreement has been further modified by reductions in purchase price or otherwise.

9. The Purchase and Sale Agreement at Article 1.4 provides in part that the purchase price "shall be payable in full at Closing in cash by wire transfer of immediately available federal funds to a bank account designated by Seller in writing to Purchaser prior to the Closing." This provision entitles Defendant Gleichman as Managing General Partner to direct 100% of the sale proceeds to be wired immediately to any account designated by her.

10. Defendant Gleichman previously has indicated to both Rosa Scarcelli and Christopher Coggeshall that she considers herself entitled to receive personally a portion of the sale proceeds upon closing of any sale of the Project.

11. Although Defendant Gleichman has not provided Scarcelli or Coggeshall with a specific statement of either the amount or basis for her entitlement to any payment from any sale proceeds, it appears her claimed entitlement is based either on a claim for "unpaid owner distributions" calculated under the CHFA loan documents or a "success fee" in connection with the sale of the Project.

12. Both Scarcelli and Coggeshall, individually or through counsel, have advised Defendant Gleichman that she is not entitled to the payment of any distribution or fee from the sale proceeds as apparently claimed by her.

13. Despite specific requests to Gleichman that any sale proceeds to which she claims entitlement be placed in "escrow" pending resolution of all claims to those proceeds, Defendant Gleichman, either individually or through counsel, has expressly rejected such requests.

14. Multiple requests have been made to Gleichman or her counsel by Scarcelli and Coggeshall, or their counsel, that Defendant Gleichman provide various documentation relating to the potential sale of the Project to Navarino Capital.

15. Defendant Gleichman has refused to provide any documentation to Scarcelli, Coggeshall or their counsel regarding the sale or potential sale of the Project.

16. The record contains substantial evidence of liabilities, debts and defaults of Defendant Gleichman in matters unrelated to Oak Knoll LP that supports the conclusion that Defendant Gleichman is experiencing substantial financial distress and is unable to meet her financial obligations when due.

17. The outstanding principal on the promissory note to CHFA as of December 31, 2011 was $1,786,676 and the note would be fully amortized by August 1, 2019 if all scheduled payments are made when due.

## II. CONCLUSIONS OF LAW

    A.    <u>Pamela Gleichman's Fiduciary Duty to Other Partners</u>

Oak Knoll LP is a Connecticut limited partnership governed by Connecticut law. Connecticut law regarding a general partner's fiduciary duty has been explained as follows:

> The general partner of a limited partnership has a fiduciary duty to the limited partners and the limited partnership. <u>Konover Development Corp. v. Zeller</u>, 228 Conn. 206, 218, 635 A.2d 798 (1994). "Once a fiduciary relationship is found to exist, the burden of proving fair dealing shifts to the fiduciary." <u>Id. at 219, 635 A.2d 798</u>. "Proof of a fiduciary relationship imposes a twofold burden on the fiduciary. First, the burden of proof shifts to the fiduciary; and second the standard of proof is clear and convincing evidence," clear and satisfactory evidence, or clear, convincing and unequivocal evidence. <u>Id. at 229-30, 635 A.2d 798</u>. The burden of clear and convincing evidence "is sustained if the evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." <u>Springfield Oil Services, Inc. v. Conlon</u>, 77 Conn.App. 289, 299, 823 A.2d 345 (2003). A general partner has the duty to prove that he dealt fairly with the limited partners and not just that he acted reasonably. <u>Id. at 302, 823 A.2d 345</u>. A general partner's fiduciary duty cannot be negated by the terms of the limited partnership agreement. *Id.* In the context of a commercial limited partnership with financially sophisticated parties, "a fiduciary may demonstrate that a particular transaction was fair by showing: (1) that he made a free and frank disclosure of all the relevant information he had; (2) that the consideration was adequate; (3) that the [fiduciary] had competent and independent advice before completing [the] transaction; and (4) the relative sophistication and bargaining power among the parties." <u>Id. at 299-300, 823 A.2d 345</u>. There is no breach of fiduciary duty where a partner is not given information he already has. *McKosky v. Plastech Corp.*, Superior Court, judicial district of New Haven, No. 426036 (June 13, 2001, Blue, J.).

*Hartley v. Boyd*, 2008 WL 442142 at * 11 (Conn. Super. Feb. 4, 2008). The general partner of a limited partnership also has a fiduciary duty "of rendering true accounts and full information about anything which affects the partnership." *Williams v. Bartlett*, 457 A.2d 290, 298 n. 8

(1983). In accordance with Connecticut's Uniform Partnership Act, a partner is obligated to furnish another partner "on demand, any other information concerning the partnership's business and affairs, except to the extent the demand or the information demanded is unreasonable or otherwise improper under the circumstances." *See* C.G.S.A. § 34-337(c).

B. <u>Standards for a Preliminary Injunction</u>

The standards for a preliminary injunction under Rule 65(a) are clearly established:

> For Plaintiffs to prevail on their motion for preliminary injunction under Rule 65(a) of the Federal Rules of Civil Procedure, each bears the burden of demonstrating (1) a likelihood of success on the merits, (2) irreparable injury, (3) that such injury outweighs any harm to the defendant, and (4) that the injunction would not harm the public interest. *See, e.g., Largess v. Supreme Judicial Court*, 373 F.3d 219, 224 (1st Cir. 2004). "The decision whether to grant relief is based on a balancing of the different factors, with likelihood of success playing a pivotal role." *Id.* Irreparable harm is also a prerequisite. "To establish irreparable harm, however, a plaintiff need not demonstrate that the denial of injunctive relief will be fatal to its business. It is usually enough if the plaintiff shows that its legal remedies are inadequate. If the plaintiff suffers a substantial injury that is not accurately measurable or adequately compensable by money damages, irreparable harm is a natural sequel." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 18-19 (1st Cir. 1996) (internal citations omitted).

*Waldron v. George Weston Bakeries, Inc.*, 575 F. Supp. 2d 271, 273 (D. Me. 2008). A sliding scale is appropriate such that "when the likelihood of success on the merits is great, a movant can show somewhat less in the way of irreparable harm…." *EEOC v. Astra USA*, 94 F.3d 738, 743-744 (1st Cir. 1996). *See also Fairchild Semiconductor Corporation v. Third Dimension (3D) Semiconductor*, 564 F. Supp. 2d 63, 67 (D. Me. 2008). A request that funds be held in escrow is in essence a request for a preliminary injunction. *See, e.g., Securities & Exchange Commission v. Gemstar-TV Guide International, Inc.* 367 F.3d 1087, 1092 (9th Cir. 2004); *Savoie v. Merchants Bank*, 284 F.3d 52, 54 (2d Cir. 1996); *Wyser-Pratte v. Van Dorn Company*, 49 F.3d 213, 216-17 (6th Cir. 1995).

6

1. <u>Likelihood of Success on the Merits</u>

As a matter of law, Pamela Gleichman has no claim for "unpaid owner distributions" under the Limited Partnership Agreement. No dispute exists that the Limited Partnership Agreement as amended requires payment of all capital proceeds and surplus cash, if any, to the Limited Partner, The Promenade Trust. Any sale proceeds after payment of legitimate liabilities and expenses are "capital proceeds" payable entirely to The Promenade Trust.

On the record before the Court, Defendant Gleichman has no entitlement to a "success fee" or any other fee under the Limited Partnership Agreement. Under Connecticut law, once a legitimate issue has been raised as to whether a general partner has breached a fiduciary duty, the burden is on that general partner to demonstrate that the conduct in question is not a breach of fiduciary duty. Defendant Gleichman's default on the Amended Complaint establishes her failure to meet her burden to demonstrate that she is legally entitled to whatever she may claim as a "success fee."

Additionally, the record demonstrates that Defendant Gleichman has breached her fiduciary duty to provide requested information to other partners. Despite various requests on behalf of both The Promenade Trust and Rosa Scarcelli, Defendant Gleichman has refused to provide documentation and written communications relevant to the sale to any prospective purchaser of the Oak Knoll property. In short, the record shows a very substantial likelihood of success on Plaintiff's claims.

2. <u>The Possibility of Irreparable Harm</u>

In this case, the near certainty of success on the merits of this issue upon the filing of a motion for default judgment lowers the required showing of irreparable harm. Under the Purchase and Sale Agreement, Defendant Gleichman has the power to direct all of the sale proceeds into any account she desires. Once those funds are in her hands, the risk of diversion of

whatever amount she deems to be an acceptable fee is substantial, and such amount may be quickly consumed and utilized to deal with one or more of the other financial exigencies she faces. Once those funds are utilized by her, the chances of The Promenade Trust ever recovering those funds from her appear slight. Under these circumstances, the Limited Partner will suffer irreparable harm and there will be in effect no adequate remedy at law. *See Braintree Laboratories, Inc. v. Citigroup Global Markets, Inc.*, 622 F.3d 36, 41 (1st Cir. 2010) (evidence of an inability to pay damage claim relevant to irreparable harm analysis).

Additionally, other partners may suffer irreparable harm if they are not provided critical information on a timely basis that would allow them to protect their interests in connection with any potential transactions and the handling of sale proceeds by Defendant Gleichman in her capacity as Managing General Partner. In contrast, Defendant Gleichman cannot claim harm by providing on a timely basis information relevant to partnership operations, especially transactions involving the sale of the single principal asset of the partnership.

3. <u>The Balance of Relevant Hardships</u>

The record does not demonstrate that Defendant Gleichman would experience hardship from allowing the funds to be held without dissipation until any claims of entitlement are resolved. Any presumed claim for an immediate need for funds to deal with other financial exigencies demonstrates the irreparable harm to the Limited Partner by the dissipation of the sale proceeds with no effective recourse. Ordering the sale proceeds to be held pending entry of judgment protects all claims to those funds with no substantial harm to anyone, and avoids the irreparable harm to the Limited Partner if the funds are dissipated by Defendant Gleichman.

4. <u>The Public Interest</u>

The public interest is not impacted in any material respect one way or the other by this private dispute.

5. The Bond/Security Requirement

On the record presented, the Court concludes that it need not require Plaintiff to post any additional security. In light of the escrow established by this injunction, the Court is satisfied that the escrowed amounts would pay any costs and damages should it later be determined that Defendant Gleichman was wrongfully enjoined or restrained by this Order. The Court notes that given the nature of Defendant's default it is highly unlikely that there would be a later finding that she was wrongly enjoined.

## III. CONCLUSION

The Motion for Preliminary Injunction (Document #7) is hereby GRANTED. Defendant Gleichman is hereby ENJOINED from transferring the net sale proceeds from any sale of the Oak Knoll Project to any person or entity other than Christopher J. W. Coggeshall, Trustee of The Promenade Trust. The net sale proceeds means all proceeds following sale after payment of all normal and legitimate expenses and disbursements associated with such sale transaction, which expenses and disbursements shall not include payment of any sums to Defendant Gleichman. Defendant Gleichman shall instruct any purchaser of the Oak Knoll Project to transfer all net sale proceeds to Trustee Christopher J. W. Coggeshall pursuant to instructions provided by him. Should Defendant Gleichman come into possession of any net sale proceeds, she shall immediately transfer those net sale proceeds to Trustee Christopher J. W. Coggeshall. All net sale proceeds delivered to and held by Trustee Christopher J. W. Coggeshall pursuant to this Order shall be held by him without distribution to any person until further Order of this Court.

Within 10 days of the entry of this Order, the Defendant Gleichman shall provide to Rosa Scarcelli and Christopher J. W. Coggeshall, or their designees, copies of all agreements and

written communications between Gleichman and/or her agents and Navarino Capital and/or its agents relating to the potential sale of the Oak Knoll Project, and any future agreements and communications within 24 hours of their occurrence.

The Court hereby ORDERS that Plaintiff provide actual notice of this Order in accordance with Federal Rule of Civil Procedure 65(d)(2). Service on Defendant shall be completed in the same manner outlined in the March 26, 2012 Order for Service by Alternative Means (Docket #s 15 & 16).

SO ORDERED.

    /s/ George Z. Singal
    United States District Judge

Dated this 25th day of April, 2012.